# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| MARY AMANDA CAMERON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:10cv00058 |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Mary Amanda Cameron ("Cameron") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Cameron argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to evaluate an opinion by Dr. Trevar Chapmon regarding her residual functional capacity, and failing to properly evaluate her complaints of pain. In the alternative, Cameron argues that the court should remand her case on the grounds of new evidence submitted pursuant to sentence six of 42 U.S.C. § 405(g). Having reviewed the administrative record and considered the arguments of counsel, the court concludes that the ALJ's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **AFFIRMED**, the Commissioner's Motion for Summary Judgment (Dkt. #19) is **GRANTED**, and Cameron's Motion for Summary Judgment (Dkt. #17) is **DENIED**.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

## II

Cameron was born in 1974 and at the time of the ALJ's decision was a "younger individual" under the Act. 20 C.F.R. §§ 404.1563, 416.963. She graduated from college with a Bachelor of Science in nursing. (Administrative Record, hereinafter "R" at 33.) At the time of the hearing, she lived with her two children, ages two and fifteen. (R. 45, 50.) She previously worked as a charge nurse at Duke University and at VA Medical Center, a unit secretary at Lewis Gale Hospital, and in home health care. (R. 33-36.) Cameron filed an application for benefits on October 26, 2007, claiming disability as of October 15, 2007 based on "epilepsy, right upper arm, depression, brain tumor, amnesia, short term memory loss, migraines." (R. 158, 162.) The Commissioner denied her application for benefits on December 26, 2007 and this decision was confirmed on reconsideration on June 20, 2008. (R. 63, 73.) An administrative hearing was held on August 11, 2009 before an ALJ. (R. 28-58.)

In a decision issued September 16, 2009, the ALJ found that Cameron had severe impairments consisting of seizure disorder, history of headaches, fibromyalgia, history of right rhomboid tear, various arthralgia, asthma and obesity.[2] (R. 17.) Considering these impairments, the ALJ found that Cameron has retained the RFC to perform medium work, except that due to her impairments she must avoid polluted environments, respiratory irritants, extreme temperature changes, hazardous machinery, and should not work at unprotected heights, climb ladders, ropes or scaffolds or work on vibrating surfaces. (R. 20.) Based on this RFC, the ALJ determined that Cameron can perform her past relevant work in nursing. (R. 25.) Additionally, the ALJ also found that there are jobs that exist in significant numbers in the national economy that Cameron

---

[2] The ALJ found that all other impairments found in the record are either non-severe or not medically determinable, as they have been responsive to treatment, cause no more than minimally vocationally relevant limitations, and/or have not been properly diagnosed, including plaintiff's claims regarding a pituitary tumor, mild carpal tunnel syndrome, spasmodic torticollis, sleep apnea, depression and/or anxiety, (R. 17-18.)

4

can perform, given the vocational expert's testimony that there are jobs Cameron can perform at the light exertional level, both skilled and unskilled. (R. 26.) Accordingly, the ALJ concluded that Cameron is not disabled under the Act. (R. 27.) The Appeals Council denied Cameron's request for review and this appeal followed. (R. 1-3.) Cameron and the Commissioner filed respective motions for summary judgment and the court heard oral argument on March 3, 2011.

### III

Cameron argues on appeal that the ALJ failed to consider an opinion by Dr. Trevar Chapmon regarding her functional capacity and improperly discounted her complaints of pain. Following the conclusion of the hearing on August 11, 2009, the ALJ left the record open until August 26, 2009 to permit Cameron additional time to submit an opinion letter from Dr. Chapmon regarding her RFC. (R. 15, 31.) Cameron states that, although she timely submitted the stated letter, the ALJ failed to consider it, in violation of 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ denied Cameron's request to re-open her claim and consider Dr. Chapmon's letter.

Pursuant to 20 C.F.R. §§ 404.1527(d), 416.927(d), an ALJ is required to analyze every medical opinion received and determine the weight to give to such an opinion in making a disability determination. However, "[p]rocedural perfection in administrative proceedings is not required" and courts should not vacate a judgment unless the substantial rights of a party have been affected. Mays v. Bowen, 837 F.2d 1362, 1364 (5th Cir. 1988). Thus, remand is appropriate only when substantial evidence to support the ALJ's decision does not exist. Camp v. Massanari, 22 F. App'x 311 (4th Cir. 2001) (errors are harmless in Social Security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error (citing Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000)); Fisher v. Bowen, 869 F.2d

5

1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Morris v. Bowen, 864 F.2d 333, 335 (5th Cir. 1988).

Cameron's arguments concerning the ALJ's consideration of the opinions of Dr. Chapmon do not warrant reversal or remand of the ALJ's decision.[3] In fact, the ALJ's determination that Cameron was not disabled is consistent with Dr. Chapmon's opinion that "it is very reasonable for [Cameron] to find gainful employment…and I would expect that she would likely be able to function in most environments that do not require heavy lifting." (R. 11.) To the extent that Dr. Chapmon imposes more severe restrictions on Cameron, even if the ALJ had adopted these restrictions, it would not change her ultimate determination that Cameron is not disabled. Dr. Chapmon opines in his letter that Cameron could lift 20 pounds occasionally, 10 pounds frequently, and should avoid continuous overhead activity with the right arm. (R. 11.) The ALJ found that Cameron could perform her past relevant work as a nurse supervisor (light job) and unit secretary (sedentary job). (R. 25.) Likewise, the ALJ found that Cameron could perform other sedentary or light work in the national economy, such as office nurse, nurse consultant, marker/price changer and office helper. (R. 26-27.) These jobs involve lifting no more than 20 pounds occasionally and 10 pounds frequently, consistent with the limitations recommended by Dr. Chapmon in his letter. Moreover, the Dictionary of Occupational Titles indicates that these jobs do not involve "continuous overhead activity."[4]

---

[3] According to Cameron's Request for Review of Hearing/Decision to the Appeals Council, the ALJ reviewed Dr. Chapmon's letter but "did not feel that it changed her decision." (R. 8.)

[4] The jobs office nurse (DOT 075.374-014), nurse consultant (DOT 075.127-014), marker/price changer (DOT 209.587-034) and office helper (DOT 239.567-010) do not require continuous overhead reaching, as they do not require reaching "constantly" (defined as more than 2/3 of the time). These jobs require reaching either "occasionally" (defined as up to 1/3 of the time) or frequently (defined as 1/3 to 2/3 of the time).

Even if the ALJ had adopted the stricter limitations set forth by Dr. Chapmon, she still would have found Cameron not disabled. Accordingly, this issue does not merit reversal or remand.

Cameron also argues on appeal that the ALJ improperly evaluated her medical records and discounted her complaints of pain. Cameron's disability claim focuses on her right shoulder pain, seizures, fatigue, fibromyalgia, migraines and depression. Cameron testified that due to her physical impairments she is unable to sit or stand for more than 10 minutes, cannot perform any lifting, and must nap for at least an hour every day. (R. 43-44, 51.) Cameron asserts that her complaints of pain and weakness are consistent and well documented in the medical record. She points to a chest and upper back MRI taken on April 9, 2009 showing partial internal muscle tears as objective medical evidence corroborating her complaints. The Commissioner argues that the bulk of the medical and vocational evidence in the record supports the ALJ's RFC determination.

On October 2, 2007 Cameron suffered a seizure while at work. (R. 263.) It was the first time she had ever had a seizure.[5] (R. 263.) Three days later, on October 5, 2007, she suffered another seizure. Cameron testified that these seizures were "devastating" and that "it seems like everything just kind of fell apart after I had the seizure." (R. 38.) Following the second seizure, she was prescribed Dilantin. (R. 265.) Cameron had seizures in May 2008 and April 2009, at which point she started taking Depakote. (R. 37, 38, 448, 665.) Cameron has not had any seizures since she started Depakote. (R. 38.) Further, her physical examinations have consistently showed no neurological abnormalities, with intact cranial nerves and normal grip,

---

[5] Cameron testified that she believes a seizure may have caused her to have a car accident in 2006; however, at the time, she was thought to have fallen asleep at the wheel. (R. 37.)

7

reflexes, sensation, coordination and gait. (R. 253, 290, 389, 453, 458, 463, 466, 519-520, 528, 569, 634, 737, 780, 898.)

Cameron also complained of chronic pain and weakness in her right arm and shoulder stemming from a work injury in 2003. (R. 291.) An MRI on April 9, 2009 showed partial internal muscle tears involving the right rhomboideus major and minor muscles and a low grade partial internal tear of the trapezius muscle. (R. 672.) It also showed an old, mild compression fracture. (R. 672.) Cameron's traumatic injury to her shoulder is corroborated by the April 2009 MRI. However, she has had only routine, conservative treatment and on physical examination she consistently demonstrated good range of motion with full strength and normal grip. (R. 253, 290, 389, 397, 400, 452, 458, 463, 519, 528, 534-35, 540, 563, 569, 582, 600, 614, 628, 634, 654, 659, 667, 703, 737, 745, 786, 792, 796, 893, 898, 904-905.) Moreover, Cameron continued to work as a nurse for several years following her shoulder injury. (R. 34.)

Cameron also began treatment for fibromyalgia in November 2008, shortly following her first seizure. (R. 398.) She responded well to the medications prescribed, with significant relief of her symptoms. In a November 2008 visit, Dr. Polk observed that overall Cameron's symptoms were better, her joint pain had improved and "pain med[ication]s [were] helping [her] s[ymptoms]." (R. 830.) In December 2008 visits, Dr. Polk noted that "[p]ain med[ications] seem to be working…" and that her pain was generally controlled with current medications, though she "has good and bad days." (R. 567, 580.) In February 2009, Dr. Polk wrote that Cameron "overall has been feeling sig[nificantly] better recently. Pain controlled with current med[ications]." (R. 612.) In March 2009, Dr. Polk indicated "patient reports a dramatic improvement in fibromyalgia symptoms" with significant improvements in arthralgias, neck pain and mood. (R. 627). Again in April 2009, Dr. Polk wrote that Cameron's pain was controlled

8

with current medications and her fibromyalgia symptoms had improved. (R. 631.) At a follow up visit in May 2009, Dr. Polk indicated that Cameron's symptoms continued to be controlled with current medications and that overall she was continuing to do better. (R. 652.) In May 2009, at an appointment shortly following her last seizure, Dr. Polk noted that Cameron "feels like [she] is relapsing overall," however, her overall pain was "about the same." (R. 665.) The next month, July 2009, Dr. Polk stated that Cameron's fibromyalgia symptoms were controlled with current medications and that the patient "generally has been doing well." (R. 895.)

Cameron also reported headaches which occurred two to three times a month. (R. 727.) However, her treatment notes reflect few complaints related to headaches. Cameron also suffered from asthma, which in May 2009 was "reasonably well controlled."[6] (R. 477.)

It is clear from the record that Cameron has not met her burden of establishing that she is disabled. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). During the course of the administrative process, three state agency physicians reviewed Cameron's medical records and determined that she retained the RFC to work. On December 21, 2007, Dr. Richard Surrusco determined that Cameron could work with no exertional limitations, but that she had some postural limitations and should avoid workplace hazards. (R. 280-82.) Dr. Thomas Phillips reached the same conclusions on May 13, 2008. (R. 324.) On June 17, 2008, Dr. Robert McGuffin determined that Cameron could lift and/or carry 20 pounds occasionally and/or 10 pounds frequently and could stand and/or walk about six hours and could sit for the same amount of time. (R. 343.) Dr. McGuffin also limited climbing, reaching overhead on the right and

---

[6] The court notes that the additional medical records submitted by Cameron as Exhibit 1, Tabs A-F, contain a note indicating that her asthma is well controlled. (Dkt. 18-4, p. 26.) The additional medical records also contain a letter from Dr. Polk, dated June 18, 2010, stating that Cameron "has had issues with depression and anxiety in the past, which are currently controlled with medication." (Dkt. 18-11, p. 16.) Apparently, Cameron required these letters to be cleared for gastric bypass surgery.

workplace hazards. (R. 344-45.) While Dr. Chapmon's letter restricted Cameron to light work with no continuous overhead activity, he also wrote "I do think it is very reasonable for her to find gainful employment…I would expect that she would likely be able to function in most environments that do not require heavy lifting." (R. 928.) Thus, there is no medical opinion in the record proposing that Cameron is disabled from all forms of substantial gainful activity and all three state agency physicians and Dr. Chapmon opined that Cameron could perform some work.

The ALJ based her determination that Cameron was not fully credible on the degree of medical treatment required, discrepancies between claimant's assertions and information contained in the documentary reports, the medical history, findings made on examination, claimant's assertions regarding ability to work and the reports of the reviewing, treating and examining physicians. (R. 23-25.) The ALJ noted that Cameron's treatment records show only routine, conservative treatment. (R. 24.) The ALJ also considered the findings on examination which "frequently revealed no joint pain or swelling, a full range of motion in the neck and back, full ranges of motion in the extremities and a normal neurological examination." (R. 24.) The ALJ wrote "the record simply fails to demonstrate the presence of any pathological clinical signs, significant medical finds, or any neurological abnormalities that would establish a pattern of pain of such severity as to prevent the claimant from (…) work[ing]." (R. 24.)

The ALJ considered Cameron's history of seizures, but noted that she had significant improvement in her seizure frequency while on antiepileptic medications and that her motor examinations showed full strength and normal reflexes, coordination and gait. (R. 24.) Further, the ALJ noted that no treating source had placed any restrictions on Cameron. (R. 24.) Of course, the letter from Dr. Chapmon did include certain limitations for Cameron, specifically

light work with no continuous overhead activity with the right arm. (R. 928.) However, as discussed above, even if the ALJ had adopted Dr. Chapmon's opinion, she would not have found Cameron disabled. Also, as stated, three state agency physicians concluded that Cameron was able to perform full-time work, with some limitations related to exertion, posture and workplace hazards. (R. 23, 279, 324, 342.) Finally, the ALJ considered Cameron's activities of daily living, which included caring for her two year old child. (R. 24, 50.) Cameron also testified that she washes clothes and cooks for herself and her family. (R. 45-46.)

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Cameron's subjective allegation that she is disabled because of her pain, but rather must determine, through an examination of the objective medical record, whether she has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating that objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers.") Then, the ALJ must determine whether Cameron's statements about her symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not to interfere with those determinations. See Hatcher v. Sec'y of Health and Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the

11

credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.)  As noted above, substantial evidence supports the ALJ's conclusion that the functional limitations Cameron claims are not supported by her medical records.

Further, it is clear from the record that the ALJ considered all the evidence and formulated an appropriate hypothetical question to the vocational expert ("VE") that fairly set out Cameron's impairments.  The VE testified based on this hypothetical, which described a limited range of medium work, that Cameron could perform her past relevant work in the nursing field as it is generally performed.  In fact, the ALJ also posed an even more limited hypothetical question to the VE involving light work with restrictions regarding workplace hazards and climbing.  Based on this hypothetical, the VE testified that Cameron could return to her work as a nurse supervisor and unit secretary as those jobs are customarily performed, and that she could perform other jobs in the national economy, both skilled and unskilled.  (R. 56.)

The record reflects that the ALJ considered all of Cameron's impairments and posed to the VE an appropriate hypothetical question.  As such, the ALJ's decision falls well within the analytical framework set out in Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

## IV

As an alternative to granting summary judgment in her favor, Cameron requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence provided in Exhibit 1 to plaintiff's brief.

Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding.  42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d

12

954, 955 (4th Cir. 1985).  Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council.

The Fourth Circuit in Borders held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met.  Borders, 777 F.2d at 955.  First, the evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative.  Id.; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991).  The evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her.  Borders, 777 F.2d at 955.  There must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner.  Id.  Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence.  Id.

Cameron presented to the court over 500 pages of medical records for consideration as Exhibit 1, Tabs A-F, to her motion for summary judgment.  Cameron seeks to introduce evidence showing that she was diagnosed with both brachial plexopathy and undifferentiated connective tissue disease ("UCTD") following the hearing.  Cameron also submitted an opinion from Dr. Polk regarding her RFC, dated April 22, 2010.  Cameron has met the fourth step of the Borders test in this case, as she has provided the court with the evidence to be considered on remand and the court understands its nature.  See Borders, 777 F.2d at 955.

The documents Cameron presented to the court for consideration include records from Dr. Scherer, dated August 19, 2009 through January 5, 2010, the Carilion Bone & Joint Center, dated September 28-30, 2009, Dr. Polk, dated October 1, 2009-September 17, 2010 and University of Virginia Health Systems, dated July 1, 2010.  The ALJ issued her decision on

September 16, 2009 and the Appeals Council issued its decision on December 15, 2009. Because the records dated after September 16, 2009 were not in existence at the time the ALJ issued her decision, there is good cause shown as to why these records were not previously submitted for review to the ALJ. See Borders, 777 F.2d at 955. Likewise, because the records dated after December 15, 2010 were not in existence at the time the Appeals Council issued its decision, there is good cause shown as to why these records were not previously submitted to the Appeals Council for review. See Id. However, plaintiff has not shown good cause as to why records dated prior to September 16, 2009 were not previously submitted to the ALJ for review and why records dated prior to December 15, 2009 were not previously submitted to the Appeals Council for review.

Furthermore, the documents contained in Exhibit 1, Tabs A-F, do not satisfy the other requirements under Borders. The records provide no new, material evidence that could reasonably be calculated to change the determination regarding Cameron's impairments and RFC. Cameron was diagnosed with idiopathic brachial plexitis based on an abrupt onset of numbness in her right arm upon waking up the morning of September 28, 2009. (Dkt. 18-2, p. 3, 10, 20.) However, her symptoms improved with treatment. (Dkt. 18-2, p. 20.) In November 2009, Dr. Polk noted that Cameron "is getting return of function in right arm." (Dkt. 18-5, p. 18.) In December 2009, Cameron's brachial plexus injury was doing "significantly better" and she was able to raise her right arm. (Dkt. 18-5, p. 35.) Physical examinations beginning in February 2010 showed that Cameron was neurologically grossly intact with no focal deficits and she had full strength and range of motion in her right arm. (Dkt 18-9, p. 12-13; Dkt. 18-10, p. 8, 18, 30; Dkt. 18-11, p. 13; Dkt. 18-12, p. 29; Dkt. 18-14, p. 25, 33; Dkt. 18-3, p. 9-10; Dkt. 18-7, p. 12; Dkt. 18-13, p. 10-11, Dkt. 18-14, p. 25, 33.) She also denied neurological problems such

as paralysis and weakness. (Dkt. 18-10, p. 18; Dkt. 18-11, p. 12-13, Dkt. 18-14, p. 33.) In August 2010, Cameron had an unremarkable MRI of the brachial plexus. (Dkt. 18-13, p. 26.)

Cameron also submitted a medical record showing she was diagnosed with UCTD on July 1, 2010. However, no doctor opines that Cameron's UCTD diagnosis resulted in any functional limitation which would make her unable to work. A mere diagnosis is insufficient to establish disability. See Gross v. Heckler, 785 F.2d 1163, 1165-66 (4th Cir. 1986); see also 42 U.S.C. § 423(d)(2)(A).

While the evidence Cameron submitted is in fact new because it was not incorporated into the record by either the ALJ or the Appeals Council, it is not material. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or the subsequent deterioration of the previous non-disabling condition. Szubak v. Sec'y, Dep't Health & Human Servs., 745 F.2d 831, 833 (3d Cir. 1984); see also Baker v. Shalala, No. 1:92-0229, 1993 U.S. Dist. Lexis 16130, at *16-18 (S.D. W.Va. Sept. 30, 1993). Cameron has failed to show that her brachial plexopathy and UCTD relate to the period of disability on or before the date of the ALJ's decision. Instead, the brachial plexopathy records relate to a date after the ALJ's decision, when plaintiff awoke on September 28, 2009 with a numb right arm. (Dkt. 18-2, p. 3, 10, 20.) Similarly, the UCTD diagnosis was made on July 1, 2010, over 9 months after the ALJ's decision. (Dkt. 18-19, p. 2.) As such, a sentence six remand is inappropriate. Furthermore, Cameron has failed to show a reasonable possibility that these records might change the ALJ's decision. Plaintiff may choose to file a new Social Security application if she feels that she now meets the requirements of disability. 20 C.F.R. § 404.620(a)(2).

Cameron also submitted a Medical Source Statement of Ability to do Work Related Activities (physical) from Dr. Polk, dated April 22, 2010. (Dkt. 18-8, p. 1-4.) The document states that Cameron's conditions have existed and persisted with the restrictions outlined since October 15, 2007. (Dkt. 18-8, p. 4.) However, Dr. Polk also wrote that she considered Cameron's "resolving brachial plexus neuritis" when assessing these limitations. (Dkt. 18-8, p. 2-3.) This condition did not arise until two weeks after the ALJ's decision.  Thus, Dr. Polk's Source Statement does not relate back to the relevant time period as it was done over 7 months after the ALJ's decision and is based, at least in part, on a condition that did not arise until after the decision was rendered. Additionally, there is no indication in the record as to why Cameron failed to present this kind of opinion evidence when the matter was before the ALJ. Absent a showing of good cause as to why this information was not presented to the ALJ, Cameron does not meet the standard enunciated in <u>Borders</u> and the court must affirm the decision of the ALJ.

V

At the end of the day, it is not the province of the court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence, and, in this case, substantial evidence supports the ALJ's decision. In recommending that the final decision of the Commissioner be affirmed, the undersigned does not suggest that Cameron is free from all pain or infirmity. Careful review of the medical records compels the conclusion that Cameron has not met her burden of establishing that she is totally disabled from all forms of substantial gainful employment. The ALJ properly considered all of the subjective and objective factors in adjudicating Cameron's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by

substantial evidence. For these reasons the Commissioner's Motion for Summary Judgment (Dkt. #19) is **GRANTED**, and Cameron's Motion for Summary Judgment (Dkt. #17) is **DENIED**.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: July 21, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge